UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

John Pawloski, Jr.,

       Plaintiff,

       v.                              Civil Action No. 2:14-cv-120-jmc

Carolyn W. Colvin, Acting Commissioner
of Social Security Administration,

       Defendant.

**OPINION AND ORDER**
(Docs. 12, 13)

Plaintiff John Pawloski brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security denying his application for disability insurance benefits.  Pending

before the Court are Pawloski's motion to reverse the Commissioner's decision (Doc.

12), and the Commissioner's motion to affirm the same (Doc. 13).  For the reasons stated

below, Pawloski's motion is DENIED, and the Commissioner's motion is GRANTED.

**Background**

Pawloski was 40 years old on his alleged disability onset date of October 10, 2009.

He has a high-school education and job experience as a factory worker and a

flagger/traffic controller.  He was married for nine years, divorcing when he was around

33 years old.  (AR 35, 585–86.)  He has two sons from the marriage and a third son, who

he seldom sees, from a short-term relationship after he divorced.  (*Id.*)  At different times

during the alleged disability period, Pawloski lived with his mother, in a camper, and at a homeless shelter.  (AR 470, 659, 698, 719.)

Pawloski is morbidly obese, weighing approximately 380–390 pounds as of September 2012 (AR 45), and has diabetes mellitus with neuropathy in his feet.  He also suffers from degenerative joint disease in the hips and knees, back pain, carpal tunnel syndrome (CTS), asthma, hypertension, gastroesophageal reflux disease, obstructive sleep apnea, and depression.  Pawloski testified at the administrative hearing that he is unable to work because he cannot stand or walk for long periods and his hands cannot do the type of work he has done in the past for long periods.  (AR 39.)  He stated that he was unable to continue doing his jobs as a factory worker and a flagger because he had problems with frequent urination; his hands would go numb; he could not stand or kneel for long periods; and he had constant pain in his feet and ankles (neuropathy).  (AR 40–43.)  On a typical day during the relevant period, Pawloski sat around his house; did chores including washing the dishes, cooking meals, and going grocery shopping; watched television; and played games on the computer.  (AR 46, 50.)

On December 7, 2010, Pawloski filed applications for social security income and disability insurance benefits.  In his disability application, he alleged that, starting on October 30, 2008[1], he has been unable to work due to the following conditions: "[a]rtificial hip, high blood pressure, asthma, [CTS], over weight [sic], bad rotator cu[ff]s in shoulders, tendinitis, [and] back problems."  (AR 233.)  He further stated that he is

---

[1]  At the administrative hearing, Pawloski amended his alleged disability onset date from October 30, 2008 to October 10, 2009.  (AR 33.)

"unable to stand all day" because of his hip and back problems, and "[h]olding a sign hurts [his] shoulder."  (*Id.*)  Pawloski's application was denied initially and upon reconsideration, and he timely requested an administrative hearing.  The hearing was conducted on September 6, 2012 by Administrative Law Judge (ALJ) Dory Sutker.  (AR 26–73.)  Pawloski appeared and testified, and was represented by an attorney.  A vocational expert (VE) also testified at the hearing.  On October 26, 2012, the ALJ issued a decision finding that Pawloski was not disabled under the Social Security Act at any time from October 10, 2009 through the date of the decision.  (AR 11–20.)  Thereafter, the Appeals Council denied Pawloski's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–3.)  Having exhausted his administrative remedies, Pawloski filed the Complaint in this action on June 18, 2014.  (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The

3

claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that Pawloski had not engaged in substantial gainful activity since his alleged disability onset date. (AR 13.) At step two, the ALJ found that Pawloski had the following severe impairments: diabetes mellitus with early onset neuropathy, obesity, CTS, degenerative joint disease status post hip replacement, and bilateral knee pain. (AR 13.) Conversely, the ALJ found that Pawloski's asthma, hypertension, gastroesophageal reflux disease, obstructive

sleep apnea, and depression were "nonsevere" impairments, given that they did not result in more than a minimal impact on his ability to perform basic work functions.  (AR 14.)  At step three, the ALJ found that none of Pawloski's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 14–15.)  Next, the ALJ determined that Pawloski had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except as follows:

> [Pawloski] can stand and walk a total of four hours in an eight-hour workday and sit for six hours in an eight-hour workday.  He must avoid climbing ladders, ropes[,] and scaffolds.  He has no limitations in his ability to climb ramps or stairs.  [Pawloski] can occasionally balance, stoop, kneel, crouch[,] and crawl.  Additionally, [he] is limited to frequent handling.

(AR 15.)  Given this RFC, the ALJ found that Pawloski was unable to perform his past relevant work.  (AR 18–19.)  Based on testimony from the VE, however, the ALJ determined that Pawloski could perform other jobs existing in significant numbers in the national economy, including laundry sorter, price marker, information clerk, surveillance system monitor, and inspection table worker.  (AR 19.)  The ALJ concluded that Pawloski had not been under a disability from his alleged disability onset date through the date of the decision.  (AR 20.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Pawloski's sole argument is that the ALJ committed legal error by "substitut[ing] her lay opinion for the competent medical opinion of Dr. [Ann] Fingar with respect to

[Pawloski's] ability to handle objects." (Doc. 12 at 16.) As noted above, the ALJ accounted for Pawloski's handling limitations in her RFC determination by stating that Pawloski was limited to "frequent handling." (AR 15.) In contrast, nonexamining agency consultant Dr. Fingar opined in her August 2011 assessment that Pawloski was limited to only "occasional" gross manipulation with his bilateral upper extremities due to CTS. (AR 125.)

The Court finds that there is no merit to Pawloski's claim, and that substantial evidence supports the ALJ's analysis of Pawloski's handling limitations. First, Dr. Fingar did not examine or treat Pawloski, and none of Pawloski's treating providers opined, as Dr. Fingar did, that he was limited to only occasional handling[2]. *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that . . . reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.") (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Second, despite Pawloski's reliance on Dr. Fingar's assessment in support of his claim, the record demonstrates that, based on her review of the record, Dr. Fingar believed Pawloski was *less* limited in his overall ability to function and work than the ALJ determined he was, concluding as follows in her August 2011 assessment: "The records show that [Pawloski has] mild [CTS] in [his] arms, [and] because of this [he] should avoid constant, repetitive grasping.

---

[2] The regulations and case law indicate that "handling" and "gross manipulation" are basically the same for purposes of the disability analysis. *See Stokely v. Apfel*, No. 97 CIV. 3062(HB), 1998 WL 351856, at *2 n.5 (S.D.N.Y. June 29, 1998); *Alaura v. Colvin*, Cause No. 1:13–CV–287, 2015 WL 506205, at *7 (N.D. Ind. Feb. 6, 2015).

[Nonetheless,] [t]he records show that *[Pawloski is] fully capable of performing [his] past work as a press operator as [he] described it*."  (AR 127 (emphasis added).)

Third, there are many treatment notes from the relevant period (and earlier) which do not even mention Pawloski's hand problems, CTS, or handling limitations, though they discuss his complaints about other medical problems.[3]  (*See, e.g.*, AR 446–47, 658.) Fourth, the ALJ recognized the relevant medical evidence in determining the extent of Pawloski's handling limitations.  For example, the ALJ accurately noted that in March 2011 Pawloski began experiencing twitching in his hands primarily when working at a computer, and that in August 2011 he reported intermittent numbness and tingling in his hands provoked by using hand tools, cooking, and talking on the telephone.  (AR 17 (citing AR 659).)  The ALJ also accurately noted that an August 2011 nerve conduction study revealed "bilateral [CTS], mild to moderate on the right and mild on the left," as well as "early mild entrapment of the right ulnar nerve at the elbow."  (AR 17 (citing AR 660).)  The ALJ explicitly recognized Dr. Fingar's opinion that Pawloski was "limited to performing gross manipulations on an *occasional* basis" (AR 17 (citing AR 125) (emphasis added)), but found that substantial evidence did not support that opinion, stating: "based upon the evidence as a whole, I find [Pawloski] is limited to *frequent* (not constant) handling" (AR 17 (emphasis added)).

Fifth, the ALJ reasonably relied on Pawloski's daily functioning to support her determination that Pawloski was limited to frequent, rather than occasional, handling.

---

[3]  In a treatment note from May 2010, treating Nurse Practitioner Cathleen Besch made no mention of Pawloski's hand problems and stated as follows: "I made it clear to [Pawloski] that, at this point in time, I really don't think he ha[s] any leg to stand on as far as getting [d]isability."  (AR 446.)

Specifically, the ALJ explained: "[Pawloski] is able to use a computer for 5–6 hours a day and is able to prepare complete meals.  These activities indicate an ability to use his hands on a frequent basis."  (AR 18.)  Pawloski's own testimony supports the ALJ's statement about his computer use.  At the administrative hearing, Pawloski responded as follows to a question asking how much of the day he spends playing online computer games: "Between the solitaire and stuff[,] usually about five to six hours a day."  (AR 48.)  Upon further questioning, Pawloski clarified that this was not all at once, but rather, "[u]sually" in 10- or 15-minute increments "over about a 16-hour day."  (*Id.*)  Confusingly, however, Pawloski testified earlier that he used a track ball to play games on the computer, and he did that for "40 minutes or so."  (AR 47.)  The ALJ was entitled to assess the credibility of Pawloski's testimony about this issue in determining Pawloski's RFC.  *See Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the province of the Commissioner, not the reviewing court, to appraise the credibility of witnesses, including the claimant); *see also* SSR 96-7p, 1996 WL 374186, at *5, *7 (July 2, 1996) (instructing that an important indicator of the credibility of a claimant's statements is their consistency with other information in the record).

        The ALJ also correctly considered that Pawloski was able to prepare meals.  (AR 18.)  Pawloski himself testified that he did the dishes and cooked meals, a little bit at a time, on a daily basis.  (AR 46.)  Pawloski stated in a Function Report that he prepared "complete meals" on a daily basis, and had not made any changes in his cooking habits since his conditions began.  (AR 250.)  Although Pawloski testified at the hearing (AR

47) and stated in an updated Disability Report that he "often" had to sit down to rest after spending about 15 minutes preparing a meal (AR 304), he did not state that this was because of his handling limitations.  And Pawloski's statement in another disability form (AR 296), as well as the record as a whole (*see, e.g.*, AR 39), indicates that, although his alleged need to sit periodically while preparing meals and doing other activities may have been partly due to his handling limitations, it was also largely due to his standing limitations.  Also noteworthy, in a Pain Report, Pawloski stated that the pain in his hands and wrists occurs only one time each week and is "more annoying than bad."  (AR 261.) Moreover, as recognized by the ALJ, Pawloski stated at the hearing and in disability forms that he was able to do the laundry, vacuum, and iron (AR 16, 46, 249–50, 296), activities which require frequent handling.  Finally, a December 2009 treatment note records that Pawloski had been "pushing his mother's wheelchair up a ramp or through the supermarket," his only complaint being that the activity resulted in "exertional short[ness] of breath": there is no mention of any handling problems.  (AR 470.)

## Conclusion

For these reasons, the Court finds that the ALJ made no legal error in her analysis of Pawloski's handling limitations, and that substantial evidence supports the ALJ's RFC determination that Pawloski was able to engage in frequent handling.  Thus, the Court DENIES Pawloski's motion (Doc. 12), GRANTS the Commissioner's motion (Doc. 13), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 8th day of May, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge